## HAID *v.* FERGUSON.

### Opinion delivered April 26, 1920.

CORPORATION COMMISSION—APPROPRIATION FOR RAILROAD COMMISSION.—
General Acts 1919, page 435, providing for all of the salaries, costs and expenses of the Corporation Commission and abolishing the Railroad Commission, *held* to repeal impliedly so much of the general appropriation bill, Acts 1919, page 294, as appropriated $15,000 out of the State treasury for the defense and prosecution of rate cases by the Railroad Commission.

Appeal from Pulaski Circuit Court, Third Division; *G. W. Hendricks,* Judge; affirmed.

#### STATEMENT OF FACTS.

Edward A. Haid filed a petition for mandamus against Joe Ferguson, as Treasurer of the State of Arkansas, to compel him to pay a warrant which the Auditor of the State had drawn in favor of Haid after allowance by the Arkansas Corporation Commission to reimburse him for traveling expenses in going to and from Washington, for the purpose of arguing before the Interstate Commerce Commission, a rate case pending before that body in which the State of Arkansas was interested. At the time the 1919 General Assembly convened there was pending before the Interstate Commerce Commission a case involving freight rates in the State of Arkansas, and Edward A. Haid had been employed by the Arkansas Railroad Commission to make an argument before the Interstate Commerce Commission in said case.

On March 26, 1919, Act No. 400, commonly known as the General Appropriation Bill, was approved. A section of the act appropriated $15,000 for the defense and prosecution of rate cases. Later on in the session an act was passed to create the Arkansas Corporation Commission and to define its powers and duties. After this bill was passed the Arkansas Corporation Commission employed Edward A. Haid to make an argument in the aforementioned case. Haid did so and expended $93.53 in traveling expenses in going to and from Washington where the argument was made.

Haid presented his claim for said traveling expenses to the Arkansas Corporation Commission. The claim was allowed by the Commission and ordered paid out of the $15,000 appropriation for the defense and prosecution of rate cases by the Railroad Commission.

The Auditor issued a warrant for the claim which read, "payable out of the appropriation to pay rate cases." Haid insisted that the warrant should be paid out of the $15,000 appropriated for the defense and prosecution of rate cases by the Arkansas Railroad Commission. The Treasurer refused to pay the warrant out of that appropriation. Hence this lawsuit.

The circuit court found the issues in favor of the Treasurer, and from the judgment rendered Haid has duly prosecuted an appeal to this court.

*T. W. Campbell,* for appellant.

Section 31, Acts 1919, pages 294-301, transfers the appropriation for the Railroad Commission to the Corporation Commission, and the Treasurer should have cashed the warrant drawn by the Auditor. The court erred in sustaining the demurrer and the mandamus should be issued. Act 400, Acts 1919; Acts 1919, pp. 294-301; 216 S. W. 26. Section 31 transfers the appropriation to the Arkansas Corporation Commission.

*Henry Stevens, W. M. Thompson* and *Thos. T. Dickinson,* for appellees.

The warrant can not be paid out of the appropriation for the Railroad Commission. Act 571, Acts 1919; Act 422, Acts 1907. Moneys appropriated for one purpose can not be drawn upon for another purpose. Const., art. 5, § 29; *Ib.* art. 16, § 2; Kirby's Digest, § 3441; 117 Ark. 582; 71 Id. 193; 125 *Id.* 101; 93 *Id.* 513; 99 *Id.* 25; 125 *Id.* 105-6-7; Const., art. 5, §§ 21-30; 71 Ark. 193; 117 *Id.* 582; Kirby's Digest, §§ 3397-9, 3404, 3401, 3393-4-9. The appropriation in act 400 is not a specific appropriation to defend rate cases. All the powers and duties of the Railroad Commission were not transferred to the Corporation Commission by act 571. The later act cov-

ers the whole subject-matter and repeals the prior act. 76 Ark. 34. Appellee has never refused to pay appellant's expense account if the warrant were drawn on the proper appropriation.

HART, J. (after stating the facts). Counsel for Haid seeks to reverse the judgment on the authority of that section of the general appropriation bill which appropriated $15,000 to the Railroad Commission for the defense and prosecution of rate cases when read in connection with section 31 of the subsequent act creating the Arkansas Corporation Commission and defining its powers and duties.

In Act No. 400, commonly known as the General Appropriation Bill, the sum of $15,000 is appropriated to the Railroad Commission for the defense and prosecution of rate cases as well as for certain other purposes specifically named in the appropriation. General Acts of 1919, page 294 at 301. As above stated, the act creating the Arkansas Corporation Commission and defining its powers and duties was passed later on in the session. General Acts of 1919, page 411. It may be said in this connection that the act has been upheld by a divided court. *Helena Water Company* v. *Helena* 140 Ark. 597.

Section 31 of that act in specific terms provides that the present Railroad Commission shall be abolished and that the Corporation Commission shall possess and exercise all the powers and duties of the Railroad Commission.

Counsel for Haid insist that this section transfers the appropriation previously made to the Railroad Commission for the defense and prosecution of rate cases to the Arkansas Corporation Commission. We do not agree with counsel in this contention. Section 31 of the act creating the Corporation Commission in express terms abolished the Railroad Commission, and that body then became *functus officio.* It is true that the powers and duties of the Railroad Commission were transferred to the Corporation Commission, but that did not have the

effect to transfer an appropriation expressly made for the Railroad Commission to the Corporation Commission. This is shown by section 29, which provides a public service fund for the maintenance of the Arkansas Corporation Commission. It reads as follows:

"Section 29. Public Service Fund for Maintenance of Commission. There shall be paid by all public service corporations, subject to the provisions of this act, a special license fee in addition to those now required by law. Such fee shall be fixed by the State Auditor upon each of such public service corporations, according to the value of its property, as ascertained by the last preceding assessment, and shall be apportioned among such public service corporations upon the basis of such valuation, so as to produce a revenue of thirty-five thousand dollars per annum, or so much thereof as may be necessary, which shall be paid on or before the tenth day of July of each year. The State Auditor shall certify to the Tax Commission the amount due by each public service corporation under the provisions of this act, and the State Tax Commission shall notify each public service corporation of the State of the amount due by it under the provisions of this act at the same time they give notice of the amount of franchise tax due by said corporation, and said license fee shall be paid in the same manner and at the same time as the State franchise tax is now paid. Such sum of thirty-five thousand dollars per annum or seventy thousand dollars for the next biennial period, or so much thereof as may be necessary, is hereby appropriated and set aside for the purpose of paying the expenses of the commission, and the salaries, compensations, costs and expenses of its employees. The expenditures incurred by the Arkansas Corporation Commission shall be paid out of the General Revenue Fund in the same manner as other vouchers are paid, and the license fees arising under this section shall be paid into the general revenue fund."

It will be noted that this section provides for fees to be paid by the various public service corporations for the purpose of producing a revenue of $35,000 per annum or

so much thereof as may be necessary for carrying into effect the provisions of the act creating the Arkansas Corporation Commission. In the concluding part of the section it is expressly provided that this sum of $35,000 per annum or $70,000 for the next biennial period, or so much thereof as may be necessary is appropriated for the purpose of paying the expenses of the commission, and the salaries, compensation and costs of its employees.

The section further provides that the license fees under the section shall be paid into the general revenue fund and that the expenditures incurred by the Arkansas Corporation Commission shall be paid out of the general revenue fund in the same manner as other vouchers are paid. Thus it will be seen that the Legislature abolished the Railroad Commission, took up the whole subject anew and transferred the duties of that commission to the Corporation Commission. Section 29, to which we have just referred, in plain terms makes all the appropriations that the Legislature deemed necessary for the salaries, costs, expenses, etc., of the Arkansas Corporation Commission. Under our Constitution, the Corporation Commission is restricted to the expenditures of money to that appropriated for its maintenance and support by the Legislature. The Legislature having in plain terms provided by appropriation all that it deemed necessary for the support and maintenance of the Corporation Commission, it can not look to any other fund for its support.

It follows that the circuit court was right, and it will be affirmed.